**ROOMS WITH A VIEW, INC., a Texas Corporation, National Association of the Remodeling Industry–Houston Chapter, Inc., Appellants,**

v.

**PRIVATE NATIONAL MORTGAGE ASSOCIATION, INC., d/b/a Pennie Mae, Appellee.**

No. 03–99–00231–CV.

Court of Appeals of Texas, Austin.

Dec. 9, 1999.

Daniel Kistler, Houston, James M. Cooper-Hill, James Cooper-Hill, P.C., Rockport, for Appellant.

Mitchell B. Rothman, Tampa, FL, for Appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

Rooms With A View, Inc. (Rooms), a home remodeler, sued appellee Private National Mortgage Association, Inc., d/b/a Pennie Mae (Pennie Mae) for declaratory relief, and the National Association of the Remodeling Industry–Houston Chapter, Inc. (NARI) intervened. Rooms and Pennie Mae filed motions for summary judgment; NARI filed a brief in support of Rooms' motion. The trial court denied Rooms' motion and granted final summary judgment in favor of Pennie Mae. Rooms and NARI (collectively Rooms) filed this appeal. We will overrule Rooms' issues on appeal and affirm the trial court's grant of summary judgment.

## Background

In November 1997, Texas voters approved Proposition 8, which amended Article XVI, Section 50 of the Texas Constitution to allow homeowners voluntarily to encumber their homesteads with liens in exchange for extensions of credit, *i.e.,* "home equity loans."[1] Proposition 8 also

---

1. In relevant part, Proposition 8 amended Section 50 of the constitution to read as follows:

 Sec. 50:(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
 (1) the purchase money ...;
 (2) the taxes due thereon;
 (3) an owelty of partition imposed against the entirety of the property ...;
 (4) the refinance of a lien against a homestead ...;
 (5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:
 (A) the work and material are contracted for in writing, with the *consent of both spouses* ... in the same manner as is required in making a sale and conveyance of the homestead;
 (B) *the contract for the work and material is not executed by the owner or the owner's spouse before the 12th day after the owner makes written application for any extension of credit for the work and material* ...;
 (C) the contract for the work and material expressly provides that the owner may rescind the contract without penalty or charge within three days after the exe-

amended the constitution's provisions for imposing contractors' or mechanics' liens.

In 1998, Charles and Rebecca Barnett contacted Rooms about adding a glass-enclosed patio cover to their home. The Barnetts filled out a loan application with Pennie Mae on July 30, 1998, and on July 31, Pennie Mae indicated it would approve the loan. On August 12, twelve days after the Barnetts completed the loan application, they signed a contract for Rooms to install the patio cover for $8,085. The contract was signed at the offices of All American Title Services, a title abstractor that Rooms and the Barnetts believed to be a "title company" under the meaning of Proposition 8. On August 19, Pennie Mae declined to close the loan on the grounds that All American Title Services was an abstract office, not a title company as required by Proposition 8. Rooms sued Pennie Mae, seeking a declaration that Proposition 8 was unconstitutional.

### *Summary Judgment Standard of Review*

 Summary judgment is properly granted only when a movant establishes there are no genuine issues of material fact to be decided and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Memorial Med. Ctr. v. Howard,* 975 S.W.2d 691, 692 (Tex.App.—Austin 1998, pet. denied). In reviewing the grant of summary judgment, we view the evidence in the light most favorable to the non-movant and make every reasonable inference and resolve all doubts in favor of the non-movant. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Howard,* 975 S.W.2d at 693. When the trial court's order granting summary judgment does

not specify the grounds relied upon, we will affirm the judgment if it is supported by any of the grounds put forth by the movant. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999); *Howard,* 975 S.W.2d at 693. When the trial court grants one party's motion for summary judgment and denies the other, we review both motions, and if we find the trial court erred, we will reverse and render the judgment the trial court should have rendered. *See Bradley,* 990 S.W.2d at 247; *Howard,* 975 S.W.2d at 693.

In reviewing both motions and all accompanying summary-judgment evidence, we will view the evidence and resolve all doubts in favor of Rooms. We will overturn the trial court's judgment in favor of Pennie Mae only if it is unsupported by any of the grounds put forth in its motion. *See Bradley,* 990 S.W.2d at 247; *Howard,* 975 S.W.2d at 693.

### *Discussion*

### I. Unconstitutionally vague

Rooms argues that the term "title company" in Proposition 8 is unconstitutionally vague in governing where home improvement contracts must be executed. We disagree.

 In interpreting a constitutional provision, we start with the text of the provision. *See Republican Party of Texas v. Dietz,* 940 S.W.2d 86, 89 (Tex.1997); *Mellon Serv. Co. v. Touche Ross & Co.,* 946 S.W.2d 862, 867 (Tex.App.—Houston [14th Dist.] 1997, no writ). We use the same guidelines in interpreting constitutional provisions as we do in interpreting statutes. *See Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App.1995); *Mellon*

cution of the contract by all parties ...; and

(D) *the contract for the work and material is executed by the owner and the owner's spouse only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company;*

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse; ... or

(7) a reverse mortgage.

Tex. Const. art. XVI, § 50(a) (emphasis added); *see also* Tex. H.J. Res. 31, 75th Leg., R.S., 1997 Gen. Laws 6739 (text of proposed amendment as passed by legislature).

*Serv. Co.*, 946 S.W.2d at 867. If the literal text is unclear or could lead to an absurd result, we may look outside of the language for aid in interpretation. *See Mellon Serv. Co.*, 946 S.W.2d at 867. We consider the purpose of the provision, the intent of the provision's drafters, and the context in which it was written, including the legislature's practical interpretation and construction of the ambiguous term. *See Dietz*, 940 S.W.2d at 89; *Mellon Serv. Co.*, 946 S.W.2d at 867. We may also consider dictionary definitions, earlier court opinions, and interpretations of similar provisions from other jurisdictions. *See Dietz*, 940 S.W.2d at 89; *Mellon Serv. Co.*, 946 S.W.2d at 867–68.

 We begin with the presumption that the legislature acted constitutionally in enacting the provision. *See United States v. National Dairy Prod. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 850 (Tex.1995). The party challenging a statute or constitutional provision bears the burden of establishing its unconstitutionality. *See Travelers Indem. Co.*, 892 S.W.2d at 850.

 A statute is unconstitutionally vague if it (1) does not give fair notice of what conduct may be punished, and (2) invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex.1998). A statute is not automatically void for vagueness simply because it is difficult to determine whether certain "marginal" acts fall within its language. *See Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex.1980). Nor is there a constitutional requirement that a statute define all words or terms used. *See Garay v. State*, 940 S.W.2d 211, 219 (Tex.App.— Houston [1st Dist.] 1997, pet. ref'd). Courts recognize the myriad of factual situations that may arise and allow statutes to be worded with flexibility, provided the public has fair notice of what is required or prohibited. *See Pennington*, 606 S.W.2d at 689. In the case of civil or regulatory statutes, no more than a reasonable degree of certainty is required. *See id.*

 Applying these principles, we reject Rooms' claim that the absence of a definition of "title company" renders Proposition 8 void for vagueness.[2] Instead, we seek to dispel any uncertainty by defining "title company" as used in Proposition 8.

Texas case law makes frequent use of the term "title company," but does not clearly distinguish between "title company" and "title insurance company."[3] A

---

**2.** Rooms argues "title company" can be construed in at least three ways, to mean companies providing title insurance, title abstracts, or even auto or boat titles. We think it obvious that the legislature did not intend title company in this context to refer to companies providing title for automobiles, sea craft, or other items of non-real property.

**3.** Under the Texas Insurance Code, a title insurance company is a company performing the business of insuring title to real property. *See* Tex. Ins.Code Ann. art. 9.01(c) (West 1981 & Supp.1999). A title insurance agent (1) owns, participates in the joint operation of, or leases and controls an abstract plant, and (2) is authorized by a title insurance company to sell insurance, collect premiums, and issue policies. *See id.* art. 9.01(f) (West 1981). A "direct operation" is a title insurance company that owns, leases and operates, or jointly operates an abstract plant itself, rather than using an agent. *See id.* art. 9.01(q), art. 9.36A (West.Supp.1999). Black's Law Dictionary defines a title company as a "[c]ompany that examines real estate titles and, commonly, issues title insurance." *Blacks Law Dictionary* 1487 (6th ed.1990). A title guaranty company is a business that searches title to see if "any defects or encumbrances are recorded and which gives the buyer of the property or the mortgagee a guaranty of the title." *Id.* Abstract of title is a "condensed history of the title to land, consisting of a synopsis or summary of the material or operative portion of all the conveyances, of whatever kind or nature, which in any manner affect said land, or any estate or interest therein, together with a statement of all liens, charges, or liabilities to which the same may be subject, and of which it is in any way material for purchasers to be apprised." *Id.* at 10.

"title company" may be an agent for a title insurance company and may solicit insurance, collect premiums, issue policies, and perform other related services, such as title searches and surveys. *See Cameron County Sav. Ass'n v. Stewart Title Guar. Co.,* 819 S.W.2d 600, 602 (Tex.App.—Corpus Christi 1991, writ ref'd n.r.e.).[4]

Courts and the insurance industry also use "title company" interchangeably with "title insurance company." *See, e.g., J.H. Lacy v. Ticor Title Ins. Co.,* 794 S.W.2d 781, 783 (Tex.App.—Dallas 1990, writ denied); *Jupe v. City of Schertz,* 604 S.W.2d 405, 406 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.); Appleman § 5205, at 26 (*"When a title company insures the owner's title to property,"* it insures the title and assumes liability for title defects) (emphasis added).[5]

While "title company" and "title insurance company" are interchangeable, courts generally distinguish them from companies doing only title abstractions. *See, e.g., Martinka v. Commonwealth Land Title Ins. Co.,* 836 S.W.2d 773, 777 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Stewart Title Guar. Co. v. Cheatham,* 764 S.W.2d 315, 319 (Tex.App.—Texarkana 1988, writ denied). An abstractor compiles data, allowing an examiner to evaluate the title's legal status. *See Tamburine v. Center Sav. Ass'n,* 583 S.W.2d 942, 947 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). A title insurer guarantees the title's status and insures owners against possible title defects. *See Martinka,* 836 S.W.2d at 777.

A company calling itself an abstract company may go beyond performing title abstractions by also acting as an agent for a title insurer, issuing policies or doing other related activities. *See, e.g., Stewart Title Guar. Co. v. City Nat'l Bank,* 796 S.W.2d 308, 310 (Tex.App.—Eastland 1990, no writ); *Lathem v. Richey,* 772 S.W.2d 249, 252 (Tex.App.—Dallas 1989, writ denied).[6]

We note that while Proposition 8's legislative history does not discuss the meaning of "title company," the legislative history for Committee Substitute for House Bill 740 ("CSHB 740"), titled "An Act Relating to Mechanics', Contractors', and Materialmen's Liens; Providing Penalties," provides some insight. *See* Act of May 19, 1997, 75th Leg., R.S., ch. 526, 1997 Tex. Gen. Laws 1880. Although CSHB 740 did not concern home equity loans, it concerned mechanics' liens, an issue related to those addressed by Proposition 8, and it passed during the same legislative session as Proposition 8 in the spring of 1997. The Committee of Business and Industry's report on CSHB 740 says, "[A] party acquiring an interest in the property (a purchaser or lender) or *a party insuring title to the property (a title company)* may rely on the filing of the bond and notice with regard to the release of the lien." House Comm. on Bus. & Indus., Bill Analysis,

---

4. *See also* 9 John Alan Appleman and Jean Appleman, *Insurance Law & Practice* § 5201, at 15 (rev. ed.1981) ("often title insurance companies do not receive the entire fee arising from a real property transaction. In instances where they maintain the histories of title transfers in that area, usually they make the entire title search as well as issuing a policy asserting merchantability of the title.... In some states, moreover, there may be title companies, or "agents," as the title insurer terms them, which may assume the entire responsibility, and which pay only a small fee ... for issuance of the policy.").

5. Other states also use "title company" to refer to either the title insurer itself or the insurer's agent. *See, e.g., Greenberg v. Stewart Title Guar. Co.,* 492 N.W.2d 147, 152 (Wis. 1992) (both title insurer and its agents referred to as title company and held not liable for title defects unless they assumed responsibility for searching title); *Shotwell v. Transamerica Title Ins. Co.,* 16 Wash.App. 627, 558 P.2d 1359, 1361 (1976) (title insurance company called both title company and title insurance company); *J.H. Trisdale, Inc. v. Shasta County Title Co.,* 146 Cal.App.2d 831, 304 P.2d 832, 834 (1956) (title insurer's agent referred to as title company).

6. We have been unable to find a case in which a true abstract company, doing only title abstraction and not acting as an insurer's agent, was referred to as a title company.

Tex.C.S.H.B. 740, 75th Leg., R.S. (1997) (emphasis added). We recognize this report did not address Proposition 8; nevertheless, we think it useful in gleaning the legislature's intended meaning of "title company," a term used in both pieces of legislation enacted during the same session and relating to liens against homesteads. Nothing suggests the legislature intended "title company" to refer to an entity performing only title abstractions.

■ We hold that "title company" as used in Proposition 8 and amended Section 50 means a title insurer or an agent of a title insurer. We overrule Rooms' argument that Proposition 8 is void for vagueness.

## II. Right to travel

Rooms argues that Proposition 8 violates the constitutional right to travel granted to citizens of the United States, or rather, a corollary right not to travel. We disagree.

■ Citizens of the United States have the right to travel to and live in any state for lawful purposes. *See* U.S. Const. art. IV, § 2, amend. V and XIV; *Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 1525, 143 L.Ed.2d 689 (1999); *Owens Corning v. Carter,* 997 S.W.2d 560, 579 (Tex.1999). This right consists of three elements—the right to enter and leave a state, the right "to be treated as a welcome visitor rather than an unfriendly alien" when in a state of which one is not a citizen, and the right, if one decides to move to and take up residence in another state, to be treated as any other citizen of that state. *See Saenz,* 119 S.Ct. at 1525; *Owens Corning,* 997 S.W.2d at 579. Rooms recognizes Proposition 8 does not impact any of these elements, and instead argues the right to travel gives rise to a corollary "right to remain home." Rooms does not cite any authority in support of the right not to travel but states that requiring homeowners to travel away from their homes violates this right. Rooms further argues

Proposition 8 unconstitutionally bars homeowners from traveling to locations of their choosing, namely, contractors' offices. We disagree with both claims.

■ We are unable to find any case law or commentary to support this alleged right not to travel. Citizens are required to travel outside of their homes to specified locations for many legal reasons, such as renewing a driver's license or obtaining a marriage license, as well as to meet many day-to-day needs. We recognize that, in this age of on-line shopping, chat rooms, and in-home exercise equipment, it is often possible to satisfy many basic (and not-so-basic) desires without leaving the comfort of one's home. However, we are reluctant to declare that citizens of Texas have a constitutional right to have any and all comforts, necessities, or transactions made available to them within their homes or at locations of their choosing. Proposition 8, by requiring contractors and homeowners to sign contracts in locations other than their homes, does not violate any constitutional rights.[7]

■ Nor is it up to this Court to decide as Rooms urges that the legislature was overly paternalistic in imposing this protection. Texas courts have long held that homestead rights in Texas are "founded upon principles of the soundest policy." *Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 634–35 (Tex.1987) (*citing Franklin v. Coffee,* 18 Tex. 413, 415 (1857)). Homestead rights are intended to protect Texas families from destitution and homelessness and encourage feelings of "independence which are so essential to the maintenance of free institutions." *Harris,* 736 S.W.2d at 634–35. Courts should liberally construe homestead provisions in a manner that promotes that intended purpose. *See Harris,* 736 S.W.2d at 634–35; *Sanchez v. Telles,* 960 S.W.2d 762, 769 (Tex.App.—El Paso 1997, pet. denied). The legislature apparently believed

7. Rooms lacks standing to raise complaints on behalf of bedridden home owners required to leave their homes to sign home improvement contracts.

it worthwhile to require that homestead liens be transacted away from the homestead, perhaps to lessen the danger of undue influence or duress, or to prevent an unscrupulous salesman from persuading a homeowner to impose such a lien without a full understanding of all the implications. We will not second-guess that decision.

We hold Proposition 8 and Section 50 of the constitution as amended do not violate the First Amendment right to travel, and we overrule Rooms' argument.

## III. Federal preemption and interference with interstate commerce

Rooms argues Proposition 8 violates the Commerce Clause[8] because it interferes with interstate commerce. It further claims Proposition 8 is preempted by federal law in the following ways:[9] (1) the twelve-day waiting period imposed is nonsensical;[10] (2) the twelve-day waiting period and three-day cancellation period conflict with and are preempted by the Truth In Lending Act ("TILA");[11] and (3) the provision requiring that both spouses sign a home improvement contract violates the Equal Credit Opportunity Act ("ECOA").[12] We disagree.

### A. Preemption standard of review

 There is a presumption against federal preemption of state actions. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Moore v. Brunswick Bowling &*

*Billiards Corp.*, 889 S.W.2d 246, 249 (Tex. 1994). In the absence of express federal command, a state statute is preempted only when federal law so thoroughly occupies the subject field as to indicate Congress left no room for further state action or when a federal law actually conflicts with the state statute. *See Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608; *Moore*, 889 S.W.2d at 248–49. If a federal statute contains an express preemption clause, we look to the language of that clause to determine Congress's intent with respect to the states' authority to legislate on related matters. *See Cipollone*, 505 U.S. at 517, 112 S.Ct. 2608. We will not hold that federal law preempts a state statute unless the subject matter leaves no other conclusion or it is clear that Congress so intended. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

### B. Interference with interstate commerce

 Under the Commerce Clause, Congress has the power to regulate interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3. However, in the absence of conflicting federal legislation, states retain broad power to regulate matters of local concern. *See Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371, 96 S.Ct. 923, 47 L.Ed.2d 55 (1976). A state may enact legislation that impacts but does not impose clearly excessive burdens on com-

---

**8.** U.S. Const. art. I, § 8, cl. 3.

**9.** Rooms' brief simply asserts that Proposition 8 is preempted because "the field has already been occupied by Congress, utilizing its power to regulate commerce" without explaining by which federal law. NARI's brief references TILA and ECOA.

**10.** Rooms claims the waiting period is nonsensical as applied to home owners who do not .want to take out a home improvement loan with a third-party lender. However, the constitution provides the waiting period between the signing of the contract and "application for *any* extension of credit for the work and material." Tex. Const. art XVI, § 50 (emphasis added). If a home owner does not

seek *any* extension of credit, a mechanic's lien is unnecessary. Obtaining a mechanic's lien implies the contractor itself is extending credit to the home owner, even if the home owner does not apply for a third-party loan. If the contractor does not extend credit in the form of billing the home owner as work is completed, and instead the home owner pays for the improvements up front, there is no need to obtain a lien against the property. When a contractor extends credit, section 50 requires that the home owner completes some form of credit application with the contractor and then waits twelve days to sign the contract.

**11.** 15 U.S.C.A. §§ 1601–1667e (West 1998).

**12.** 15 U.S.C.A. §§ 1691–1691f (West 1998).

merce if the statute is evenhanded, does not discriminate against interstate commerce, and safeguards an obvious local interest, and if the local interest outweighs any national interest in avoiding the restriction. *See id.* at 371–72, 96 S.Ct. 923. Rooms asserts Proposition 8 interferes with interstate commerce but does not specify any federal legislation that conflicts with its provisions. Any slight or incidental impact Proposition 8 may have on interstate commerce is far from excessive. We overrule Rooms' argument that Proposition 8 interferes with interstate commerce.

### C. Truth In Lending Act (TILA)

■ Rooms argues federal law preempts state law because the three-day cancellation period required by Proposition 8 conflicts with section 1635 of TILA, which provides that a consumer-obligor to a consumer credit transaction involving a security interest in the obligor's homestead has three days after completing the transaction to rescind it without penalty. *See* 15 U.S.C.A. § 1635(a), (b) (West 1998). Rooms argues Proposition 8 "overlays a second three-day right to cancel." The three-day period granted by Proposition 8 runs concurrently with TILA's cancellation period, and does not conflict with it. We overrule Rooms' argument as it relates to the cancellation period.

■ Rooms also argues the twelve-day waiting period conflicts with the three-day cancellation period of section 1635 of TILA. We disagree. TILA contains a preemption clause, section 1610, titled "Effect on other laws," which states section 1632(c) and sections 1637(c), (d), (e), and (f) supersede state laws relating to the disclosure of credit application information that is subject to sections 1637(c) or 1637(d). *See* 15 U.S.C.A. § 1610(e) (West 1998). Other than those specified preemptions, TILA does not "annul, alter, or affect in any manner" related state laws, unless those laws are inconsistent with TILA's provisions, and then only as far as the inconsistency. *See id.* § 1610(a), (b), (d). This makes it clear that Congress, in en-

acting TILA, did not intend to preempt every state law that addresses a related subject, but only those in direct conflict with TILA. The twelve-day waiting period does not directly conflict with TILA and is not preempted. We overrule Rooms' argument.

### D. Equal Credit Opportunity Act (ECOA)

ECOA makes it unlawful for a creditor to discriminate against an applicant for credit on the basis of race, color, religion, national origin, sex, age, or marital status. *See* 15 U.S.C.A. § 1691(a)(1) (West 1998). Rooms mistakenly argues that Proposition 8's requirement that both spouses sign a home improvement contract to create a valid mechanics' lien against the homestead constitutes discrimination on the basis of marital status. However, section 1691d(a) specifically states that "[a] request for the signature of both parties to a marriage for the purpose of creating a valid lien [or] passing clear title ... shall not constitute discrimination under this subchapter: *Provided, however,* That this provision shall not be construed to permit a creditor to take sex or marital status into account in connection with the evaluation of creditworthiness of any applicant." *Id.* § 1691d(a).

■ Homestead rights in Texas are intended to protect citizens from losing their homes and to foster home ownership and independence; statutes relating to homestead rights are to be liberally construed to protect homesteads. *See Harris,* 736 S.W.2d at 634–35. Each spouse in a marriage has a separate and undivided possessory interest in their homestead property. *See* Tex. Const. art. XVI, § 50; *United States v. Rodgers,* 461 U.S. 677, 685, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). Homestead rights vest in both spouses regardless of whether the property is owned by both spouses, by one spouse separately, or even by a third party. *See Rodgers,* 461 U.S. at 685, 103 S.Ct. 2132; *Farmers' & Mechanics' Trust Co. v. Perry,* 56 S.W.2d 501, 502 (Tex.Civ.App.—Amarillo 1933,

writ ref'd). It has long been the rule in Texas that a lien against a homestead is invalid unless agreed to by both spouses, except in very limited situations. *See Uvalde Rock Asphalt Co. v. Hightower,* 140 Tex. 200, 166 S.W.2d 681, 683 (1942, judgm't adopted).

Proposition 8's requirement that both spouses sign the home improvement contract ensures the creditor can create a valid lien against the homestead; a lien consented to by only one spouse would fail, and the creditor would be left without recourse against the homestead. *See id.* This requirement does not discriminate on the basis of marital status under ECOA because it has no bearing on the creditworthiness of either spouse but simply ensures the creditor receives an actionable lien against the homestead in exchange for the extension of credit. *See Evans v. Centralfed Mortgage Co.,* 815 F.2d 348, 349–50 (5th Cir.1987). Requiring both spouses' signatures does not conflict with ECOA, nor is it specifically preempted by section 1610. We overrule Rooms' issue on appeal.

## IV. Insufficient ballot language

Rooms contends Proposition 8 is unconstitutional because the language used to describe it on the November 1997 ballot did not describe proposed changes to the constitution's provisions governing mechanics' liens. We disagree and will overrule Rooms' contentions.[13]

To amend the Texas Constitution, three steps must occur: (1) the proposed amendment must be approved by two-thirds of the legislature; (2) the ballot language and a brief explanation of the proposed amendment must be published in designated newspapers and posted at each county courthouse; and (3) the proposed amendment must be submitted to and approved by the voters by including its ballot language on the election ballot. *See* Tex. Const. art. XVII, § 1; Tex. Elec.Code Ann. § 274.001(b) (West 1986). A proposed amendment's ballot language is constitutionally sufficient if it identifies the amendment, showing its character and scope, that is, its intent, import, subject matter, or theme. *See* Tex. Elec.Code Ann. § 274.001(b); *Whiteside v. Brown,* 214 S.W.2d 844, 851 (Tex.Civ.App.—Austin 1948, writ dism'd). It is not necessary to include all relevant details or to print the entire proposed amendment on the ballot. *See Hardy v. Hannah,* 849 S.W.2d 355, 358 (Tex.App.—Austin 1992, writ denied). Instead, voters are presumed to be familiar with the proposed amendment's actual content before entering the voting booth, and the ballot language need only give "fair notice to the voter of average intelligence by directing him to the amendment so that he can discern its identity and distinguish it from other propositions on the ballot." *Id.*

The 1997 ballot language describing Proposition 8 read as follows: "The amendment to the Texas Constitution expanding the types of liens for home equity loans that a lender, with the homeowner's consent, may place against a homestead." No other proposed constitutional amendments on the ballot concerned home equity loans or homestead liens. The major change proposed was the allowance of home equity loans against homestead property; minor changes need not have been included on the ballot. *See id.* at 358; *see also* Caption for Enrolled Version of H.J.R. 31 ("A joint resolution proposing

---

**13.** Rooms did not bring an election contest under section 233.014 of the Election Code, which provides that "[a]ny question relating to the validity or outcome of a constitutional amendment election may be raised in an election contest. A contest is the exclusive method for adjudicating such questions." Tex. Elec.Code Ann. § 233.014(g) (West 1986). Such a contest must be raised by filing a petition before the completion of the final official canvass. *See id.* § 233.014(b). Because Rooms did not file a contestant's petition, as far as the evidence indicates, it should have no standing to attack the validity of the ballot language. However, Pennie Mae has not raised this issue in its briefings before this Court or the trial court below.

a constitutional amendment permitting an encumbrance against homestead property for certain extensions of equity credit."). We presume the voters knew of the changes proposed to the method of imposing a mechanics' lien. *See Hardy*, 849 S.W.2d at 358. The language used to describe Proposition 8 on the ballot fairly expressed its scope and character and set it apart from other propositions. *See id.* We overrule Rooms' issue on appeal.

### Conclusion

Having overruled all of Rooms' issues on appeal, we affirm the summary judgment in favor of Pennie Mae.