OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 13, 2001

Mr. Charles W. Heald, P.E.
Executive Director
Texas Department of Transportation
125 East 11th Street
Austin, Texas 78701-2483

Opinion No. JC-0353

Re:   Whether state highway revenues may be invested in a toll road project without a requirement for repayment (RQ-0319-JC)

Dear Mr. Heald:

You have asked this office, in effect, whether the Texas Department of Transportation ("TxDOT") may provide funds for the construction of toll roads that are not required to be repaid from toll revenues. We conclude that, absent an amendment to article III, section 52-b of the Texas Constitution, TxDOT may not do so.

As we understand the background to your request, in considering the needs of the state for more highways, you have concluded that construction of additional toll roads would be of benefit. Such roads, you note, "are financed with revenue bonds and generally are supposed to be self-supporting from user fees (toll revenue). . . . However, given the high cost of projects, it is now difficult to find projects that would generate enough toll revenue to pay for themselves in a reasonable amount of time."[1] Accordingly, you seek a method to invest "state highway revenues in a toll road project without a requirement for repayment." Request Letter, note 1, at 2. We agree with a report to the Seventy-seventh Texas Legislature from the Senate Committee on State Affairs that, absent the amendment of article III, section 52-b of the Texas Constitution, such a method is not available.[2]

Article III, section 52-b forbids the legislature to "lend the credit of the State or grant money to, or assume any indebtedness" of any entity engaged in the construction or operation of toll roads or turnpikes, except that the legislature "may authorize the Texas Department of Transportation to expend money, from any source available, for the costs of turnpikes, toll roads, or toll bridges of the Texas Turnpike Authority, [the TTA], or successor agency, *provided that any monies expended out of the state highway fund shall be repaid to the fund from tolls or other turnpike revenue.*" TEX.

---

[1] Letter from Charles W. Heald, P.E., Executive Director, Texas Department of Transportation, to Honorable John Cornyn, Texas Attorney General at 1 (Dec. 1, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

[2] *See* SENATE COMM. ON STATE AFFAIRS, REPORT TO THE 77TH LEGISLATURE, CHARGE 1, INTERMODAL TRANSPORTATION 48 (2000). We note that Senate Joint Resolution No. 12, which would amend section 52-b to this effect, is now pending before the 77th Legislature. *See* Tex. S.J. Res. 12, 77th Leg., R.S. (2001).

CONST. art. III, § 52-b (emphasis added). Considering this provision, the Senate Committee on State Affairs in a report to the Seventy-seventh Texas Legislature wrote that "[t]he Texas Constitution requires TTA to repay TxDOT for any monies received out of the highway fund for the cost of a toll or turnpike project."[3] Accordingly, the committee recommended "passing a constitutional amendment to remove the requirement that TTA repay all funds received from TxDOT for construction, operation, and maintenance of toll projects."[4]

It has been argued, however, both in correspondence to your associate general counsel and in briefs submitted to this office, that it may be possible for TxDOT to make the grant in question without the amendment of section 52-b.[5] The arguments advanced for this position are that the "anti-gift provisions" of the Texas Constitution, including article III, sections 50, 51, and 52-b, are not implicated by the donation of funds from TxDOT to TTA because such donation is for a public purpose, namely road construction; that article III, section 52-a, "enacted after" section 52-b, would permit such donation for "the development or expansion of transportation in the state"; and that certain monies, most notably federal highway aid, while dedicated to highway construction, might be redirected by statute to some fund other than the highway fund so as to obviate the necessity of repayment. *See* MDCK Brief of 1/9/01, note 5, at 5-6. We disagree.

First, it is well-settled that the constitutional provisions forbidding gratuitous donations require that public expenditures not only be for a public purpose, but also have "sufficient controls . . . to ensure that the public purpose is carried out." Tex. Att'y Gen. Op. No. JC-0113 (1999) at 2. Outright grants — "expenditures which, by definition, lack sufficient controls to ensure that an authorized public purpose is achieved," — are forbidden. *See id.* at 2-3 (citations omitted). Thus, for example, in Attorney General Letter Opinion 96-076, we wrote that the Corpus Christi Regional Transit Authority was not permitted, under article III, section 52, to donate public funds to an organization that provided emergency medical services, but might contract for the provision of such services. As we noted:

> This office has repeatedly interpreted [constitutional grant provisions] to require that expenditures of public funds must be for a public purpose, that there must be adequate contractual or other controls to ensure that the public purpose is carried out, *and that the political*

---

[3]*See* SENATE COMM. ON STATE AFFAIRS, REPORT TO THE 77TH LEGISLATURE, CHARGE 1, INTERMODAL TRANSPORTATION 47 (2000).

[4]*See id.* at 49.

[5]*See* Letter from Robert M. Collie, Jr., Mayor, Day, Caldwell & Keeton, L.L.P., to Jack Ingram, Associate General Counsel, Texas Department of Transportation (Feb. 1, 1999) [hereinafter MDCK Letter of 2/1/99]; Brief from Robert M. Collie, Jr., Mayor, Day, Caldwell & Keeton, L.L.P., to Honorable John Cornyn, Texas Attorney General (Jan. 9, 2001) [hereinafter MDCK Brief of 1/9/01]; Brief from Robert R. Randolph, Vinson & Elkins, to Honorable John Cornyn, Texas Attorney General (Jan. 18, 2001) [hereinafter V&E Brief].

> *subdivision expending the funds must receive an adequate quid pro quo.*

Tex. Att'y Gen. LO-96-076, at 2 (emphasis added) (citations omitted).

In the case of toll roads, the Texas Constitution precisely defines the necessary quid pro quo, namely the requirement that monies received by the TTA from the state highway fund "shall be repaid to the fund from tolls or other turnpike revenue." TEX. CONST. art. III, § 52-b. Section 52-b constitutes the sole express method by which such monies may be expended for the construction of toll roads and turnpikes. Indeed, the proviso that such monies must be repaid was the way in which the amendment to section 52-b permitting such expenditures was presented to the electorate for its approval. The agreed ballot language for House Joint Resolution No. 10, of the Seventy-second Texas Legislature read: "The constitutional amendment *mandating* the repayment to the Department of Transportation of monies expended to assist the Texas Turnpike [A]uthority in the construction, maintenance, and operation of turnpikes, toll roads and toll bridges."[6]

As to the suggestion that article III, section 52-a of the Texas Constitution, which provides *inter alia* for "the making of loans and grants of public money . . . for . . . the development or expansion of transportation," TEX. CONST. art. III, § 52-a, "arguably overrides any inconsistent provision in the constitution, such as Section 52-b," Request Letter, *supra* note 1, at 2, such an argument is unavailing for three reasons. First, the argument that section 52-a permits the public financing of toll roads and turnpikes is belied by the defeat, in the same election in which section 52-a was adopted, of an amendment of section 52-b precisely to that effect.[7] Second, the relevant language in 52-b, which was added by amendment in 1991,[8] is in fact more recent in time than is section 52-a, which was adopted in 1987. Third, section 52-b's provision of a method for the dispensing of money for toll road and turnpike projects is more specific than section 52-a's grant of authority for loans for transportation development, and accordingly prevails over it. *See Rooms With A View, Inc. v. Private Nat'l Mortgage Ass'n Inc.*, 7 S.W.3d 840, 846 (Tex. App.–Austin 1999, pet. denied) ("We use the same guidelines in interpreting constitutional provisions as we do interpreting statutes."); TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998).

---

[6]HOUSE RESEARCH ORGANIZATION, CONFERENCE COMM. REPORT, Tex. H.J. Res. 10, 72d Leg., 1st C.S., at 1 (Aug. 9, 1991) (emphasis added).

[7]*See* Tex. H.J. Res. 65, 70th Leg., R.S. (1987) (proposing amendment to 52-b, which failed to pass in the November 1987 election); *see also* Tex. H.J. Res. 5, 70th Leg., R.S.,1987 Tex. Gen. Laws 4122 (text of 52-a, which was adopted in the November 1987 election).

[8]*See* Tex. H.J. Res. 10, 72d Leg., 1st C.S., 1991 Tex. Gen. Laws 1113.

Section 52-a was adopted by the voters of Texas at the November 3, 1987 election. It had been proposed by the Seventieth Texas Legislature as House Joint Resolution No. 5.[9] The Seventieth Legislature also proposed, in the same session, an amendment to section 52-b, House Joint Resolution 65.[10] That proposed amendment "would [have] allow[ed] the state, acting through the State Department of Highways and Public Transportation [now TxDOT] to construct joint projects with the Texas Turnpike Authority *and to contribute money from any available source to the Texas Turnpike Authority to pay costs of the authority's turnpikes, toll roads, or toll bridges.*"[11] This amendment was defeated by the same voters who adopted section 52-a.[12]

Limited authority for TxDOT to aid in the financing of TTA's toll projects was provided by the voters four years later, in the November 5, 1991 election, when the amendment to section 52-b proposed by the Seventy-second Texas Legislature as House Joint Resolution 10 was adopted. This amendment, which conditions the receipt by TTA of money from the highway fund on its repayment from toll revenues, is accordingly later in time than section 52-a, and would therefore prevail were the two in fact inconsistent. *See Clapp v. State*, 639 S.W.2d 949, 952 (Tex. Crim. App. 1982) ("If the provisions . . . are in irreconcilable conflict . . . the section later in point of adoption will be given controlling effect."); *see also Rooms With A View*, 7 S.W.3d at 846 ("We use the same guidelines in interpreting constitutional provisions as we do interpreting statutes."); TEX. GOV'T CODE ANN. § 311.025(a) (Vernon 1998).

Further, section 52-b, which deals with the financing of a particular kind of road or bridge construction, namely the construction of toll roads and bridges and which, as we have noted, is the only constitutional provision authorizing such financing, is more specific in its language than section 52-a's grant of authority for financing "the development or expansion of transportation," and would for that reason, as well, prevail in the event of any such inconsistency. *See Clapp*, 639 S.W.2d at 952; ("[I]n construing apparently conflicting provisions of the same constitution, the more general provision must yield to the more specific provision."); *Rooms With A View*, 7 S.W.3d at 846; *White v. Sturns*, 651 S.W.2d 372, 374 (Tex. Civ. App.–Austin 1983, writ ref'd n.r.e.); TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998).

It has, however, been suggested that TxDOT might expend monies other than those "out of the state highway fund" for TTA toll road projects without a requirement of repayment. Accordingly, you "seek an opinion whether or not the exception requires the repayment of money that is not expended from the state highway fund or constitutionally required to be deposited into such fund." Request Letter, *supra* note 1, at 2. In the absence of more specific information, it would

---

[9]*See* Tex. H.J. Res. 5, 70th Leg., R.S., 1987 Tex. Gen. Laws 4122.

[10]*See* Tex. H.J. Res. 65, 70th Leg., R.S. (1987).

[11]TEXAS LEGISLATIVE COUNCIL, INFORMATION REPORT NO. 87, at 16 (1987) ("Analysis of Proposed Constitutional Amendments & Referenda") (emphasis added).

[12]*See* TEX. CONST. art. III, § 52-b historical note (Vernon 1997).

be difficult for us to advise you with respect to all possible funding sources. However, it appears that what is principally of concern here are federal highway funds. It has been suggested that the dedication of such monies to the state highway fund is merely a statutory matter, and that the amendment or repeal of section 221.003 of the Transportation Code, which places federal aid in the highway fund, could make federal funds available for the purpose of making grants for toll road construction. *See* MDCK Letter of 2/1/99, *supra* note 5, at 4; MDCK Brief of 1/9/01, *supra* note 5, at 5. We do not agree.

Article VIII, section 7-b of the Texas Constitution reads:

> All revenues received from the federal government as reimbursement for state expenditures of funds that are themselves dedicated for acquiring rights-of-way and constructing, maintaining, and policing public roadways are also constitutionally dedicated and shall be used only for those purposes.

TEX. CONST. art. VIII, § 7-b. This office discussed the meaning of article VIII, section 7-b at some length in Attorney General Opinion No. JC-0039 (1999). In that opinion, we wrote:

> It is clear from the legislative history that the intent of section 7-b was that federal highway funds would stay dedicated to highways. The Legislative Budget Board's fiscal note, dated July 15, 1987, asserts, "The fiscal implication to the State would be to restrict the use of certain federal funds to specific purposes thereby limiting the future choices of the Legislature." FISCAL NOTE, Tex. S.J. Res. 8, 70th Leg., 2d C.S. (1987). The bill analysis of the House Committee on Ways and Means describes the purpose of the amendment as "[t]o constitutionally dedicate federal highway reimbursements for highway purposes." HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. S.J. Res. 8, 70th Leg., 2d C.S. (1987). In explaining the background for the amendment in its Analyses of Proposed Constitutional Amendments, the Legislative Council wrote, "Under the federal program of aid for public highways, states are required to pay almost all costs of planning, land acquisition, and construction on a highway project. If a project meets federal aid specifications, the state is then reimbursed from federal money for a major portion of its expenses (generally 90 percent of all costs of an interstate highway.) *The reimbursements have traditionally then been used in Texas to replenish the dedicated pool of state money.*" TEXAS LEGISLATIVE COUNCIL, INFORMATION REPORT NO. 88-1, at 15 (July, 1988) (emphasis added). Among the arguments for the amendment listed by the Legislative Council is, "If federal reimbursements of state highway expenditures are not required to be dedicated to

highway and highway policing purposes, the dedicated pool of state money could easily be spent each year, and the availability of unrestricted money would be unforeseen from one fiscal biennium to another." *Id.* at 16. Based on all that, it is clear that the intent of section 7-b was to assure that federal highway reimbursements were to be spent on highways, and on nothing else.

Tex. Att'y Gen. Op. No. JC-0039 (1999) at 5-6. On that basis, we concluded that if certain federal funds were in fact reimbursements for state highway fund expenditures, their use to pay debt service on a particular kind of revenue bond would be constitutionally impermissible. *See id.* at 6.

It is argued, however, that while the purpose for which federal funds are to be spent is constitutionally mandated, section 7-b "does not mandate their deposit into the State highway fund. Rather, federal aid money is deposited in the State treasury to the credit of the highway fund pursuant to a statute." MDCK Letter of 2/1/99, *supra* note 5, at 4 (citations omitted). This argument is unavailing for two reasons. First, as you point out, it is now the case that "all funds, federal and state, appropriated to TxDOT go into the state highway fund." Request Letter, *supra* note 1, at 2. Both the money generated by motor vehicle registration fees and gasoline taxes, which are the principal sources of state highway revenue, and the money received for highway purposes from the federal government have been constitutionally set aside, the first by article VIII, section 7-a and the second by article VIII, section 7-b of the Texas Constitution. As a practical matter, those monies constitute the state highway fund. When the voters, in adopting the amendment to section 52-b, provided that money from the state highway fund for toll roads had to be repaid, those state and federal funds were the monies to which they referred. Second, an argument that such funds may be placed in some other fund, and thus be available for toll road construction, because section 7-b does not use the phrase "the state highway fund" and section 221.003 does, is an argument that proves too much. *See generally* MDCK Brief of 1/9/01, *supra* note 5. In the same brief, it is admitted that "[s]ome public funds, such as registration fees and motor vehicle fuel taxes, have been deemed constitutionally dedicated to the State highway fund." *Id.* at 5. Yet the language of article VIII, section 7-a, which dedicates such money to highway construction, is also void of any reference to the state highway fund. *See* TEX. CONST., art. VIII, § 7-a. Further, the location of automobile registration fees in the state highway funds is also referenced by a statute. *See* TEX. TRANSP. CODE ANN. § 202.002 (Vernon 1999). An argument that section 7-b funds might by mere statutory amendment be freed from the strictures of article III, section 52-b, therefore, would permit the same result with regard to section 7-a funds. Such an argument would render the requirements of section 52-b a nullity. We may not so regard them.

As we wrote in 1985, the legislature is prohibited "from borrowing, or . . . diverting from its purpose, any special fund." Tex. Att'y Gen. Op. No. JM-321 (1985) at 3. Just as the legislature in that case could not by statute divert the interest from section 7-a funds to the general revenue fund, so here it may not divert section 7-b funds. If such funds are advanced by TxDOT to TTA from the state highway fund, then they must be repaid. *See* TEX. CONST. art. III, § 52-b.

## S U M M A R Y

Absent an amendment to article III, section 52-b of the Texas Constitution, the Texas Department of Transportation may not provide the Texas Turnpike Authority with funds for the costs of turnpikes, toll bridges, or toll roads without requiring the repayment of such funds from tolls or other turnpike revenue.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee