NO. 07-07-0058-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



SEPTEMBER 24, 2007


______________________________



JAMES N. MEADOR and MELISSA A. MEADOR, 



 Appellants


v.



EMC MORTGAGE CORPORATION, 



 Appellee

_________________________________



FROM THE 169TH DISTRICT COURT OF BELL COUNTY;



NO. 211660-C; HON. GORDON G. ADAMS, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 James N. Meador and Melissa A. Meador (the Meadors) appeal from a summary
judgment granted in favor of EMC Mortgage Corporation (EMC) and the denial of their own
motion for summary judgment. They had sought a judgment declaring that the principal
and interest on an unsecured loan owned by EMC should be forfeited because the loan
transaction failed to comply with the homestead lien provisions in the Texas Constitution,
Tex. Const. art. XVI, §50. We affirm the summary judgment.


 Background

 The dispute arises from the Meadors' attempt to acquire an unsecured loan from
Conseco Finance Service Corporation. As a condition for the loan, Conseco required that
they also refinance their home mortgage. However, it is undisputed that the two loans
were independent from one another. That is, two loan applications were completed, and 
the default on one did not constitute a default on the other. Moreover, the homestead lien
arising from the refinancing of the mortgage would not and did not cover repayment of the
unsecured consumer loan. The evidence further revealed that once the loans were
consummated, the unsecured consumer transaction was acquired by EMC from Conseco. 
 Section 50 of article XVI

 Section 50 of article XVI of the Texas Constitution protects a person's homestead
from forced sale for the payment of most debts except those enumerated in subsection (a). 
Stringer v. Cendant Mortg. Corp., 23 S.W.3d 353, 354 (Tex. 2000). While the consumer
loan which is the subject of this dispute is not secured by a lien on the Meadors'
homestead, they nonetheless rely on subsection (e) to bring it within the scope of §50. 
The latter provides that:

 A refinance of debt secured by a homestead and described by any
subsection under Subsections (a)(1) - (a)(5) that includes the advance of
additional funds may not be secured by a valid lien against the homestead
unless:


 (1) the refinance of the debt is an extension of credit described by
Subsection (a)(6) of this section; or

 

 (2) the advance of all the additional funds is for reasonable costs
necessary to refinance such debt or for a purpose described by Subsection
(a)(2), (a)(3), or (a)(5) of this section.

Tex. Const. art. XVI, §50(e). According to the Meadors, the consumer loan comprised "the
advance of additional funds" under §50(e) even though it was unsecured. Thus, both loans
allegedly had to satisfy the requirements of §50 in general. We disagree.

 Interpretation of §50

 In construing the constitution, we use the same guidelines used in construing
statutes. Rooms With a View, Inc. v. Private Nat'l Mortg. Ass'n, Inc., 7 S.W.3d 840, 844
(Tex. App.-Austin 1999, pet. denied). Those guidelines require us to give effect to the
intent of the framers of the constitution by considering the purpose of the provision and the
historical context in which it was written. Ex parte Austin Indep. School Dist., 23 S.W.3d
596, 600 (Tex. App.-Austin 2000, pet. ref'd). Finally, we must interpret the words of the
constitution as generally understood and rely heavily on the plain language of the literal
text. Spradlin v. Jim Walter Homes, Inc., 34 S.W.3d 578, 580 (Tex. 2000). 

 Here, we are asked to discern what was meant by the phrase "the advance of
additional funds." The Meadors opined that it included unsecured loans made in
conjunction with refinancing a mortgage on the homestead. In turn, EMC asserted that it
only encompasses loans the repayment of which was secured by a lien on the homestead. 
EMC posits the accurate interpretation. 

 The plain language of §50(e) talks about the "refinance of debt secured by a
homestead and . . . that includes the advance of additional funds . . . ." Tex. Const. art.
XVI, §50(e). The words being so juxtaposed, we cannot but construe the phrase "the
advance of additional funds" to be a subset of the overall debt being refinanced and
secured. In other words, "additional funds" are monies obtained in excess of the pre-existing debt being refinanced, and when the two are combined, the repayment of the total
is to be secured by a lien on the homestead. This interpretation is not only reasonable and
logical but finds support in the history and purpose of art. XVI, §50. Through the latter, the
Texas populace sought means to protect one's homestead against loss due to an inability
to pay debt. Thus, the homestead could be encumbered only for limited purposes. That
historical concept remains the focus of §50, the concept being the regulation and limitation
of liens against the homestead.

 In this instance, two separate loan applications were submitted, and two separate
loans were made. Only one loan was secured by a lien on the homestead, however, and
that loan was not the one acquired by EMC. The mere fact that the initial lender required
that both be obtained from it does not, as the Meadors contend, render the two loans
inseparable. If that was the case, then both loans would had to have been assigned to
EMC, and they were not. (1) So, we cannot but conclude that the phrase "advance of
additional funds" contemplates additional funds the repayment of which is secured through
a lien contemplated by art. XVI, §50. 

 We overrule all of the Meadors' issues since they are dependent upon reading §50
in a manner different than that we adopt and affirm the summary judgment. 


 Brian Quinn 

 Chief Justice 

1. The situation before us is distinguishable from that in LaSalle Bank National Association v. White,
217 S.W.3d 573 (Tex. App.-San Antonio 2006, pet. filed), a case upon which the Meadors rely. In LaSalle,
the parties agreed that the loan was an extension of credit as defined in §50. We have no such agreement
here viz the consumer loan that EMC bought. 


ty="34" SemiHidden="false"
 UnhideWhenUsed="false" QFormat="true" Name="List Paragraph"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-11-00278-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



AUGUST
26, 2011

 



 

THOMAS M. THOMAN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW #3 OF
WILLIAMSON COUNTY;

 

NO. 10-08591-3; HONORABLE DOUG ARNOLD, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

ORDER

 

Appearing pro se, appellant Thomas M. Thoman has appealed his misdemeanor
conviction and sentence for failure to identify--fugitive.[1]  By this order, we dispose of all pending
matters pertaining to the absence of a reporters record and the filing of
appellants brief.

 

 

Background

            The
clerks record was filed on June 29, 2011. 
On July 11, appellant filed a motion requesting transfer of this appeal
to the Third District Court of Appeals.[2]  We forwarded the motion to the Supreme Court
of Texas, where it was denied by order. 
Also on July 11, appellant filed a one-page document entitled appeal.  It states two issues and indicates a
memorandum in support will follow.  

In a status report filed on July 14,
the court reporter notified us that appellant had not requested the reporters
record and had not paid or made acceptable payment arrangements for its
preparation.  We ordered appellant to
satisfy the requirements of the court reporter by August 1.  On August 3, appellant filed a document
entitled notice and demand for court record. 
Therein he demanded preparation of the reporters record without
payment.  The following day the reporter
filed a letter indicating appellant had not made satisfactory payment
arrangements.  She enclosed a copy of a
letter from appellant to her whereby he offered to pay for the reporters
record in gold or silver coins.  By
letter of August 10, we directed appellant to file a motion and affidavit
according to Appellate Rule 20.2 if he believed himself indigent.  We afforded him ten days to do so.  

            On
August 23, the clerk of this court learned from the trial court clerk that
appellant had not filed a motion and affidavit of indigence.  Also on August 23, appellant filed with this
court a document entitled notice and demand for due process under the law of
the land.  By this document, appellant
indicated his intention not to assert indigence, but nonetheless asserted he
was entitled to a reporters record on demand since due process of the law of
the land entitled him to be heard on appeal.

Discussion

            The
obligation of the court reporter to prepare, certify, and file the reporters
record does not mature until, among other things, the party responsible for
payment makes payment or satisfactory arrangements or is entitled to proceed
without payment.  Tex. R. App. P.
35.3(b)(3).[3]  A party believing himself indigent is
entitled to apply to the trial court for an order and if that court finds
indigency it must order the reporter to prepare a transcript.  Tex. R. App. P. 20.2.  The Appellate Rules do not, however, grant an
appellant a free reporters record merely because he finds the indigence
procedure repugnant, chooses to deal in a means of exchange other than United
States currency, or believes due process of the law of the land obligates the
county to pay for the reporters record without a showing of indigence.

Orders

            We
find appellants notice and demand for court record and notice and demand
for due process under the law of the land, each lack merit.  Any relief appellant seeks through these
documents is denied.

            To
the extent appellant intended the document entitled appeal filed on July 11
as his appellate brief, the document is struck. 
Whether appearing pro se or by
counsel, appellant shall file a brief complying with Appellate Rule 38.1.  Tex. R. App. P. 38.1.

The reporters record shall be filed
by September 12, 2011.  Because appellant
is not proceeding as an indigent, he is not entitled to a free reporters
record.  Nothing herein precludes
appellant from purchasing the reporters record under payment arrangements
acceptable to the reporter, but the reporter has no obligation to prepare,
certify, and file the reporters record until appellant satisfies the
requirements of Appellate Rule 35.3(b)(2) and (3).  The reporter shall file a status report if
the reporters record is not filed by September 12, 2011.    

Appellants brief shall be filed on
or before September 29, 2011.  If the
reporters record is not filed, due to the fault of appellant, we will only
consider and decide those issues or points in his brief that do not require a
reporters record for a decision.  Tex.
R. App. P. 37.3(c).

 

            It is
so ordered.

 

Per Curiam

 

 

Do not publish.

 

 











[1]  See Tex. Penal Code Ann. § 38.02 (West
2011).

 





[2] This appeal was transferred to this
court from the Third Court of Appeals by docket equalization order of the
Supreme Court of Texas.  See Tex. Govt Code Ann. § 73.001 (West
2005).

 





[3] Tex. R. App. P. 35.3(b) provides:

Reporters Record. 
The official or deputy reporter is responsible for preparing,
certifying, and timely filing the reporters record if:

(1) a notice of appeal has been filed;

(2) the appellant has requested that the reporters
record be prepared; and

(3) the party responsible for paying for the
preparation of the reporters record has paid the reporters fee, or has made
satisfactory arrangements with the reporter to pay the fee, or is entitled to
appeal without paying the fee.