E. A. DUNN v. THE STATE.

No. 11544. Delivered January 16, 1929.

The opinion states the case.

*Reynolds, Hill & Engledow, J. W. Osmond, Black & Graves* and *Robert M. Turpin* of Shamrock, for appellant.

*A. A. Dawson* of Canton, State's Attorney, and *E. T. Scott* and *Clifford Braley* of Shamrock, for the State.

LATTIMORE, JUDGE.—Conviction for bringing stolen property into the State of Texas, knowing it to be stolen; punishment, five years in the penitentiary.

It is alleged in the third count of the indictment that appellant, in the State of Oklahoma, fraudulently took one International motor truck of the value of $2,000.00, and one trailer of the value of $150.00, the property of one A. F. Fent, which act was then and there a felony by virtue of the law of Oklahoma, which act, if committed in the State of Texas would have been theft under the laws of this State, and that appellant thereafter did bring said property into the State of Texas. It was sufficiently shown that the truck in question belonged to one Beal, but that Fent was in the actual care, control and possession of said truck at the time it was taken. There is no dispute in the testimony of the fact that the truck in question was taken from the possession of Fent in Seminole, Oklahoma, on the night of May 7, 1927; nor of the further fact that on May 16, 1927, said truck was found in Shamrock, Wheeler county, Texas. It had been repainted, refloored and changed in almost every way which could lead to its identification. When found in Shamrock, the truck was in possession of Andrew and Bill Schlegel. Andrew said at the time that he was operating the truck for Mr. Dunn on a commission; he asked permission to put in a long distance call for Mr. Dunn at Anadarko, Oklahoma; the call was put in and Schlegel talked to some one; appellant and his attorney showed up in Shamrock that same evening; Anadarko, Oklahoma, was about 130 miles from Shamrock. It appears that when Mr. Beal found his truck in possession of Andrew Schlegel in Shamrock there were with it two other trucks which were afterwards claimed, identified and taken away as being stolen property, one being taken by Mr. Manahan and the other by Mr. Stevenson. It is not disputed that appellant claimed these three trucks as his when he reached Shamrock on the occasion in question. A Mr. Davis, a filling station man, who said that he had frequently seen appellant with Andrew Schlegel before and who testified that he had serviced these trucks and that they had been parked in his garage, testified that about 8 or 8:30 on the evening of May 16th Andrew Schlegel came to his place and wanted him to

come down to his, Schlegel's home. Witness went and there met this appellant Dunn and his attorney, one Osmond. Appellant showed Davis his certificate of title, license, registration tags, etc., and induced Davis to go and compare same with the trucks in question and report to him whether they were the same. Davis did this, found they were the same and so reported to appellant.

There are eleven bills of exception in the record which, if comprehended, relate themselves to the single question as to whether the facts sufficiently show that appellant, Andrew Schlegel and W. F. Schlegel,—commonly referred to as Bill Schlegel,—acted together in the theft of Beal's truck in Oklahoma and the bringing of same into Texas, in which event they would be principal offenders and co-conspirators, for which reason the acts and words of each pertinent to and shedding light on the main issue involved, to-wit: the theft of said truck and its removal to Texas, done and said during the existence of the conspiracy and in pursuance thereof, whether in the presence and hearing of the others or not, would be admissible as evidence against any or all of them if on trial for the taking of such property and bringing it into this State. We deem it unnecessary to set out in detail the matters complained of in each bill of exceptions, but briefly and in substance said bills complain of actions and words of the two Schlegels and other parties who were employed to work upon the trucks in question and fix them, all of which testimony related to said trucks, their condition and movements, and the relations of appellant and the two Schlegels to said trucks up to and prior to the time same were found in the possession of Andrew Schlegel in Shamrock, Texas. One of the bills relates to the opening of an account by Andrew Schlegel in the name of the Dunn Truck Line in April and May, 1927, and the signing of the checks to withdraw the deposits made in said account.

The rule is well settled in this State that acts and declarations of co-conspirators, in pursuance of the common design, if said and done before the termination of the conspiracy, are admissible against any and all of the parties thereto on trial for an offense comprehended by such conspiracy. Sometimes the question arises as to when such conspiracy terminates, if at all. The answer depends on the facts of the particular case. As having some application to a case like the one before us, Franks v. State, 36 Texas Crim. Rep. 151, is referred to in which this court said:

"The evidence in this case shows that a lot of the goods taken in the burglarious entry, were found at the house where the defendant

was living. They were found, however, in pursuance of statements made by Dock Weeden. These statements were made after the burglary. But the testimony tends to show that both defendants were still in joint possession of the goods, and were preparing to remove them to Canadian. If the disposition of the goods was a part of the common purpose and design of said codefendants, and they were still acting together in the disposition or concealment of said articles, and the common design with reference thereto had not terminated, then any statement made by Weeden was legitimate evidence against his codefendant; but if the common design and purpose terminated with the burglary, and Weeden made these statements afterwards, such statements could alone affect him."

The subject of the admissibility of the declarations of coconspirators and when a conspiracy terminated was considered at some length in Sapp v. State, 87 Texas Crim. Rep. 606, in which, upon citation of many authorities, we said:

"If there was a conspiracy between the parties, it is obvious that the main object was to obtain the property of deceased, which object was only partially obtained by her death, there remaining, as stated above, yet to be accomplished by said conspiracy, the probating of her will, and the reduction to actual possession and ownership of her property, and in such case, so long as the parties to a conspiracy are still moving toward the accomplishment of any of its objects, the acts and declarations of one in pursuance of the common design, whether made in the presence and hearing of the others or not, becomes admissible against each of the others, even though tried separately."

The law in regard to this question seems plain. This being true, let us turn to the facts to see whether the conspiracy here, if any, terminated when the property was taken in Oklahoma.

We note further in the testimony of Mr. Davis that he said that the slips showed him by appellant on the night of May 16, 1927, showed title to the trucks in possession of Schlegel to be in appellant; also that the trucks had been transferred to appellant, or his Dunn Truck Line by the Jones Truck Line. After Davis, the State introduced a Mr. Daniel who testified that he was in Shamrock on the occasion of the examining trial of the Schlegels for theft of these trucks, and that he had a conversation with appellant, at which time appellant had not been arrested. Appellant told him that he had known Andrew Schlegel for many years, and that Andrew had often talked to him about buying trucks and letting him, Andrew,

and his brother Bill take them out in the oil fields and do hauling on a fifty-fifty basis. Appellant further told him that about April 24, 1927, he and Andrew had gone to Oklahoma City to see about buying some re-possessed trucks, and that as they were leaving the place of business of a firm whom they had gone to see, a man spoke to them and said he understood they wanted to buy some second-hand trucks; that this man introduced himself as Z. M. Jones and told them he had some trucks out about six miles, and took them out and showed them the trucks. Daniel further testified that appellant told him that he purchased three of these trucks, paying for same $7800.00 in cash money which he had in his pocket, and that the trucks were then turned over to Andrew and Bill Schlegel to drive to Shamrock, Texas. He further said appellant told him he had never seen Z. M. Jones before and did not know him; also that the trucks were to be taken by the Schlegel boys and operated on a fifty-fifty basis for the benefit of themselves and appellant. The State also introduced Mr. Spencer, a deputy highway officer of Oklahoma, located at Rush Springs, Oklahoma, who testified that on March 25, 1927, a man who gave the name of E. M. Jones came to the witness and wanted the latter to take his application for certificates of title and registration of three International trucks which the supposed Jones told witness he had bought in Texas, and that they were not present but would be along in a little while. Jones produced transfers to the Z. M. Jones Truck Line of the three trucks, which assignments were executed by one Robert J. Manning of Hereford, Texas, before Nellie Mae Cook, a notary public of Potter County, Texas, the date of said transfers being January 2, 1927. The engine number of one of said trucks was 12461. Mr. Spencer testified that he accepted Jones' application and issued him the licenses and also continuous ownership tags for said three trucks, the latter being No. 458096–7–8 respectively. Said applications were filled out in the presence of Mr. Spencer by Jones and contained the following: "I, the undersigned applicant do solemnly swear that I am the owner of the above described motor vehicle, and that the statements contained herein are true." This statement,—contained in each of the three applications,—was sworn to by Jones before Mr. Spencer. The State also introduced testimony showing that on April 23, 1927, certificates of title and registration were issued by the Highway Department of Oklahoma to this appellant, E. A. Dunn as the assignee of the Z. M. Jones Truck Line to each of the three trucks described in the applications filed before Mr. Spencer

by E. M. Jones as the agent for the Jones Truck Line. The certificates of title and registration issued to appellant contained the same continuous possession tag numbers and the same engine numbers as appeared set out in the application and licenses issued on March 25th to E. M. Jones; and we might further remark here that these are the same trucks that were found in the possession of Andrew Schlegel at Shamrock.

As we have already remarked, these three trucks were shown to all be stolen property, one of them being the Beal truck. Bearing in mind that the Beal truck was taken on the night of May 7, 1927, it was shown that on May 8th and 11th, 1927, the Cicero Smith Lumber Company at Shamrock sold to Andrew Schlegel a quantity of red wagon paint and black automobile paint, turpentine, etc., and that when recovered the Beal truck had been recently repainted so that from the standpoint of color it was not at all like the truck when taken. It was also shown by workmen who worked on the truck that same had been refloored, the pine floor which was in it when taken having been removed and a hardwood floor substituted. It was further shown by the sheriff and tax collector of Deaf Smith County, Texas, of which Hereford is the county seat, that there was no such man living in Hereford as Robert J. Manning; nor had there ever been a concern known as Z. M. Jones Truck Line operated anywhere in Deaf Smith county. It was further shown that an inspection of the records of notaries public of Potter county for many years past failed to reveal any Nellie Mae Cook as notary public of that county. The State further proved by Mr. Spencer upon this trial that he had seen present and around the streets of Shamrock the man who came to his office in March, 1927, and represented himself to be E. M. Jones, the agent of Z. M. Jones Truck Line, and who swore he was owner of said trucks, and that E. M. Jones and Andrew Schlegel were one and the same person.

We are led to believe the trial judge correct in his conclusion as announced by his qualification to each of the bills of exception in question, viz: that he admitted the testimony upon the theory that it was shown by the record in this case that this appellant and Andrew and Bill Schlegel were co-conspirators in the taking of the truck in question and the bringing of it into Texas and that they were still operating together in possession of said stolen property at the time each and all of the acts took place and statements were made here complained of. Summarizing,—It seems to us plain that a plot to steal trucks and change their engine numbers and to remove

means of identification and to prepare identification for non-existent trucks; also to get licenses and title registration theretofore applied for and issued to strangers by some of the careless highway authorities in Oklahoma, looms large in this case. The wily stranger who applied in March for the registration of trucks which apparently he did not then own or had not yet reduced to possession, was fortified with apparently forged transfers for such non-existent trucks. As proof of this,—Andrew Schlegel on March 25, 1927, presented himself to Spencer, a deputy highway officer of Oklahoma, and claimed to Spencer that his name was Jones and that he was authorized to act as agent for Z. M. Jones Truck Line, which seems also to be a non-existent concern. Schlegel alias Jones wanted three title registrations for trucks which his papers showed to have been transferred to the Z. M. Jones Truck Line on January 2, 1927, by Robert J. Manning of Hereford, Texas, apparently a fictitious person,—by assignment before Nellie Mae Cook, notary public, (also a fiction). Schlegel swore before Spencer that his name was E. M. Jones, (also a falsehood). Also said that Z. M. Jones Truck Line had three trucks bought in Texas who engine numbers and continuous ownership tags, dated practically six weeks before the theft of the Beal truck, which numbers all appeared on these trucks in possession of Schlegel later in Shamrock, at which time he then said he was operating them for Dunn, a statement verified by Dunn himself when he appeared on the scene. One of the engine numbers of the trucks thus so registered by Schlegel, alias E. M. Jones was given by him in March as 12461, and the transfer which he presented from Mr. Manning dated January 2nd, referred to the same truck. The continuous ownership tag which he obtained on this truck was 458098. Bearing in mind that the date of Jones' licenses for these trucks was March 25th, we next observe that on April 23rd, still two weeks before the theft of Beal's truck, appellant and Schlegel went to Oklahoma City, according to Dunn's statement and there met a stranger who gave them his name as Z. M. Jones, from which man Dunn, or Dunn and Schlegel, bought three trucks, which Dunn said to Daniel were carried from Oklahoma City to Shamrock by the Schlegels, which trucks were on that day, to-wit: April 23, 1927, registered in the Highway Department in Oklahoma City by Dunn himself as his trucks, the engine number of one of them being 12461, and the continuous ownership tag of said truck being No. 458098. The Beal truck, the one in question here, when stolen on May 7, 1927, showed engine No. 11943. When discovered in possession of ·

Schlegel at Shamrock the engine number of Beal's truck had been changed to *12461,* and it then bore continuous tag number 458098. These facts seem entirely convincing, and it would be idle for us to further analyze them for the purpose of demonstrating the guilt of this appellant, or of the fact that he was acting together with the Schlegels in the acquisition of the particular truck and its removal to Texas and in its continued operation.

The court's charge on principals is applicable to the facts and according to the precedents. When he lays down the rule applicable to the testimony of conspirators, he follows the authorities; as also he does in that part of his charge giving to the jury the law of circumstantial evidence. Appellant introduced no evidence save two or three registration receipts which we deem to be of no particular force.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*