

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 11, 2005

The Honorable Geraldine Miller
Chair, State Board of Education
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0293

Re: Effect of amended article VII, section 5(b) of the Texas Constitution on the State Board of Education's management of the permanent school fund (RQ-0249-GA)

Dear Ms. Miller:

You request advice about the effect of a 2003 amendment to article VII, section 5(b) of the Texas Constitution.[1] *See* Act of June 1, 2003, 78th Leg., R.S., Tex. H.R.J. Res. 68, 2003 Tex. Gen. Laws 6236, 6237 (proposing amendments to article III, section 49-b and article VII, section 5).[2] We will briefly summarize the constitutional provisions relevant to your inquiry.

Article VII, section 2 establishes the "perpetual school fund" consisting of various funds and lands allocated to support public schools. *See* TEX. CONST. art. VII, § 2. The lands are to be sold and the proceeds to be invested pursuant to article VII, section 4. *See id.* art. VII, § 4. Article VII, section 5 governs the "permanent school fund" (the "PSF") and the "available school fund" (the "ASF"). *See id.* art. VII, § 5. The PSF consists of the funds, bonds, dedicated lands, and investment and sale proceeds of the bonds and lands set apart to the school fund by article VII, section 2. *See id.* art. VII, § 5(a). The ASF, to be used annually to support Texas public schools, consists of distributions from the PSF and taxes collected for school purposes. *See id.* The State Board of Education (the "Board") is charged with managing and investing the PSF assets. *See id.* § 5(f); TEX. EDUC. CODE ANN. §§ 7.102(c)(31) (Vernon Supp. 2004); 43.003 (Vernon 1996); 43.006 (Vernon Supp. 2004). In managing the PSF assets, the Board may make any investment

> that persons of ordinary prudence, discretion, and intelligence, exercising the judgment and care under the circumstances then prevailing, acquire or retain for their own account in the management

---

[1]*See* Letter from Honorable Geraldine Miller, Chair, State Board of Education, to Honorable Greg Abbott, Texas Attorney General (July 13, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]The amendment to article VII, section 5(b) was adopted on September 13, 2003. *See* http://elections.sos.state .tx.us/elchist.exe.

of their affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

TEX. CONST. art. VII, § 5(f).

Before the 2003 amendment, only interest and dividend income on the PSF was distributed to the ASF. *See* Act of Apr. 28, 1983, 68th Leg., R.S., Tex. S.J. Res. 12, 1983 Tex. Gen. Laws 6680 (article VII, section 5(a) prior to 2003 amendment).[3] *See also* TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, SEPTEMBER 13, 2003, ELECTION, at 57-58 (2003).[4] Article VII, section 5, as amended, authorizes a capital-gains distribution from the PSF to the ASF at a rate determined according to procedures set out in section 5(a). *See* TEX. CONST. art. VII, § 5(a). Thus, the amendment implements a "total return" strategy for the PSF. *See* TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, SEPTEMBER 13, 2003, ELECTION, at 58 (2003).[5]

Although the main purpose of the 2003 amendment was to adopt a "total return" strategy, it also affected other provisions of section 5. *See id.* at 59. You inquire about the amendment to section 5(b), which now reads as follows:

> The expenses of managing permanent school fund land and investments shall be paid by appropriation from the permanent school fund.

TEX. CONST. art. VII, § 5(b). You ask whether "the amount the Board may spend on PSF management expenses, including external investment managers, [is] limited to amounts specifically appropriated by the Texas Legislature?" Request Letter, *supra* note 1, at 2.

We read the term "appropriation" in section 5(b) according to its usual meaning. *See Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 580 (Tex. 2000) (the courts rely on the constitution's literal text and construe its words as they are generally understood). We also read this term in its context in section 5 and in the constitution as a whole. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). *See generally Booth v. Strippleman,* 61 Tex. 378 (1884) (the construction of constitutional provisions is generally governed by the same rules as those governing the interpretation of statutes and codes); *accord Rooms With A View, Inc. v. Private Nat'l Mortgage Ass'n, Inc.,* 7 S.W.3d 840, 844 (Tex. App.–Austin 1999, pet. denied); Tex. Att'y Gen. Op. No. GA-0213 (2004) at 3.

---

[3]This amendment was approved by the voters on November 8, 1983. *See* GENERAL AND SPECIAL LAWS OF THE STATE OF TEXAS, 1985, VOL. 3, "Votes On Proposed Amendments to the Texas Constitution, 1875-1985," at C-19.

[4]*Available at* http://www.tlc.state.tx.us/research/pdf/AnlysConst.pdf.

[5]*See supra* note 4.

Article VII, section 5(c) states:

> The available school fund shall be applied annually to the support of the public free schools. Except as provided by this section, the legislature may not enact a law *appropriating* any part of the permanent school fund or available school fund to any other purpose.

TEX. CONST. art. VII, § 5(c) (emphasis added). The Texas Constitution generally uses the term "appropriation" to mean an appropriation by the legislature. *See id.* art. III, §§ 5(b) (the legislature shall act upon emergency appropriations during the first thirty days of the regular session), 35(a) (general appropriation bills may include the subjects and accounts for which funds are appropriated); *id.* art. VIII, § 6 (no money shall be drawn from the treasury except by specific appropriation made by law); *id.* art. XVI, § 6(a) (no appropriation for private or individual purposes shall be made unless authorized by the constitution). Section 5(b) creates an exception to section 5(c) by authorizing the legislature to appropriate PSF money for management expenses and requiring the Board to pay those expenses from the appropriation. The amount the Board may spend on PSF management expenses, including external investment managers, is limited to amounts specifically appropriated by the Texas Legislature.

You refer to a section of Property Code chapter 163, the "Uniform Management of Institutional Funds Act." *See* Request Letter, *supra* note 1, at 2; TEX. PROP. CODE ANN. § 163.001 (Vernon 1995); *see also* UNIF. MGMT. OF INST. FUNDS ACT, 7A, pt. 2 U.L.A. 475 (1972). This statute was adopted "to provide guidelines for the management, investment, and expenditure of *endowment funds of publicly and privately supported educational, religious, and charitable organizations.*" TEX. PROP. CODE ANN. § 163.002(b) (Vernon 1995). The Board is authorized to contract for investing the PSF to the same extent as a governing board of an institution of higher education under Property Code chapter 163. *See* TEX. EDUC. CODE ANN. § 43.006(a) (Vernon Supp. 2004). Property Code section 163.004(a) provides that "[a] governing board may *appropriate* for expenditure" the appreciation in the fair market value of an endowment fund's assets. TEX. PROP. CODE ANN. § 163.004(a) (Vernon Supp. 2004) (emphasis added). You suggest that this provision may be relevant to the Board's authority to pay investment managers.

The word "appropriate" in this context means to set apart for expenditure. *See McCombs v. Dallas County*, 136 S.W.2d 975, 981 (Tex. Civ. App.–Dallas 1940, writ ref'd); *see also* UNIF. MGMT. OF INST. FUNDS ACT, § 2 cmt., 7A, pt. 2 U.L.A. 491 (1972) (paraphrasing "appropriate for expenditure" as "expend"). Section 163.004 does not purport to delegate the legislature's appropriation authority to the educational, religious, and charitable organizations affected by chapter 163. Chapter 163 does not change our answer to your first question.

You next ask whether the Board may invest in assets such as mutual funds or investment trusts where a management fee is typically deducted from the assets under management instead of the investor paying a separate fee. "Mutual funds" are equity securities of an investment company registered under the Investment Company Act of 1940, *see* 15 U.S.C. §§ 80a-1 - 80a-64 (2000), and the Securities Act of 1933, *see id.* §§ 77a-77aa; *see also* TEX. FIN. CODE ANN. §§ 181.001-

.002(a)(31) (Vernon Supp. 2004). An "investment trust" is also known as an investment company. *See* BLACK'S LAW DICTIONARY 275 (7th ed. 1999). *See* 15 U.S.C. § 80a-3(a)(1) (2000) (defining "investment company").

The United States Securities and Exchange Commission (the "SEC") has provided definitions of these terms. An investment company "issues securities and is primarily engaged in the business of investing in securities." S.E.C., INVEST WISELY: AN INTRODUCTION TO MUTUAL FUNDS, at 17 (2004).[6] An investment company invests money received from investors on a collective basis, and each investor shares in the profits and losses in proportion to his interest in the company. *See* S.E.C., INVESTMENT COMPANIES, at 1 (2001).[7] A mutual fund is one of three basic types of investment company recognized by federal securities law. *See id.* (mutual funds are "legally known as 'open-end companies'"). The SEC has defined "mutual fund" as "a company that pools money from many investors and invests the money in stocks, bonds, short-term money-market instruments, other securities or assets, or some combination of these investments." S.E.C., INVEST WISELY: AN INTRODUCTION TO MUTUAL FUNDS, at 2 (2004).[8] Each share in these combined holdings, or portfolio, represents an investor's proportionate ownership of the fund's holdings and the income those holdings generate. *See id.*

Mutual funds have "regular, recurring, fund-wide 'operating expenses,'" including management fees paid to the fund's investment adviser for managing the portfolio. *Id.* at 8, 17. Funds typically pay these expenses from fund assets, which means that investors indirectly pay these costs. *See id.* at 8. The investment company's prospectus discloses management fees as a percentage of the fund's average net assets. *See* S.E.C., MUTUAL FUND FEES AND EXPENSES, at 1-2 (2000).[9] Thus, an investor usually cannot know the dollar amount of management fees when he purchases the investment. Instead, their payment will be reflected in the returns of the investment in mutual funds.

We assume that you inquire about mutual funds and investment companies that deduct management fees from the funds' assets. You are concerned that management fees on such investments would be "expenses of managing permanent school fund land and investments" within section 5(b), required to "be paid by appropriation from the permanent school fund." TEX. CONST. art. VII, section 5(b); *see* Request Letter, *supra* note 1, at 3. If so, the price of shares would have to be allocated between the ASF assets being invested and the funds appropriated to pay management fees, a task that would not be possible at the time of purchase.

We turn to the meaning of section 5(b). When the courts interpret the state constitution, they rely on its literal text and give effect to its plain language. *See Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000); *see also Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89

---

[6]*Available at* http://www.sec.gov/investor/pubs/inwsmf.htm.

[7]*Available at* http://www.sec.gov/answers/mfinvco.htm.

[8]*See supra* note 6.

[9]*Available at* http://www.sec.gov/answers/mffees.htm.

(Tex. 1997). Words and phrases are to be read in context and construed according to common usage unless they have acquired a technical meaning by legislative definition or otherwise. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). Constitutional provisions and amendments that relate to the same subject matter are construed together and considered in light of each other. *See Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001); *Purcell v. Lindsey*, 314 S.W.2d 283, 284 (Tex. 1958).

Section 5(b) refers to the expense of managing "land *and* investments." TEX. CONST. art. VII, § 5(b) (emphasis added). "Managing" is thus used in a general sense that refers to land as well as investments. "Management" in the usual sense of the word means to control, govern, and have authority over. *See Hasley v. State*, 222 S.W. 579, 580 (Tex. Crim. App. 1920). "Manage" has been defined to mean to "be in charge of" or "administer." *See* THE NEW OXFORD AMERICAN DICTIONARY 1036 (2001).

We also construe the term "investments" in section 5(b) according to ordinary usage. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998); *Stringer*, 23 S.W.3d at 355 (plain meaning rule); *Ferguson v. Wilcox*, 28 S.W.2d 526, 530 (Tex. 1930) (words of the constitution are presumed to have been employed in their natural and ordinary meaning). Texas law ordinarily characterizes mutual funds and investment companies as "investments." For example, Property Code chapter 163, the Uniform Management of Institutional Funds Act, provides that, subject to limitations in the gift instrument or applicable law, the governing board responsible for managing an institutional fund may

> *invest* all or any portion of an institutional fund in a pooled or common fund, including shares or interests in regulated *investment companies, mutual funds*, common trust funds, investment partnerships, real estate investment trusts, or similar organizations in which funds are commingled and investment determinations are made by persons other than the governing board.

TEX. PROP. CODE ANN. § 163.005(4) (Vernon 1995) (emphasis added). This statute describes the placement of funds in a mutual fund, investment fund, or other pooled fund as an investment, and even though it indicates that investment determinations will be made by fund managers, it does not treat the indirect management costs as distinct from the investment. Other Texas statutes identify mutual funds and investment companies as "investments." *See* TEX. REV. CIV. STAT. ANN. art. 6243e.1, § 11.01(2) (Vernon 2003) (trustees of firefighters relief and retirement fund in certain cities may invest surplus funds in "short-term investment funds, mutual funds, or their equivalent"); TEX. FIN. CODE ANN. § 34.104(a) (Vernon 1998) (state bank may invest for its own account in equity securities of an investment company); TEX. GOV'T CODE ANN. § 404.024(b)(11) (Vernon Supp. 2004) (certain mutual funds are authorized investments for state funds not deposited in state depositories); *id.* § 2256.014(b) (Vernon 2000) (no-load mutual fund is an authorized investment for governmental bodies); TEX. PROP. CODE ANN. § 113.056(d) (Vernon Supp. 2004) (under Texas Trust Act trustee may invest in investment company or investment trust). Construing "investments" in section 5(b) in the usual sense of the word, we conclude that a mutual fund or other investment company is an "investment" within that provision. Moreover, the indirect management costs

deducted from the assets of a mutual fund or other investment company are an aspect of the investment itself and not separate "expenses of managing permanent school fund . . . investments." TEX. CONST. art. VII, § 5(b). Section 5(b) does not require such management fees to be paid from appropriated funds, and the Board may accordingly invest PSF assets in mutual funds and similar investments.

The legislative history of the 2003 amendment to article VII, section 5 moreover supports our conclusion that the management fees on PSF investments in mutual funds are not "expenses of managing" PSF investments for purposes of section 5(b). *See Stringer*, 23 S.W.3d at 355; *Harris v. City of Fort Worth*, 180 S.W.2d 131, 133 (Tex. 1944) (in construing a constitutional amendment, we may consider its legislative history). Former section 5(c), the predecessor of section 5(b), provided as follows:

> The legislature may appropriate part of the available school fund *for administration of the permanent school fund* or of a bond guarantee program established under this section.

Act of Apr. 28, 1983, 68th Leg., R.S., Tex. S.J. Res. 12, § 5(c), 1983 Tex. Gen. Laws 6680, 6681 (emphasis added).[10] *See* TEX. CONST. art. VII, § 5(e) (funding the administrative cost of the bond guarantee program). Legislative history treats the amended section 5(b) as primarily affecting the source of appropriations. An analysis of the proposed amendment states that

> the amendment provides that the costs of managing PSF land and investments would be paid out of the PSF. Under current law, [section 5(c)], the costs of managing PSF land are paid from amounts appropriated to the General Land Office, and the costs of managing investments are paid from the ASF.

TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, SEPTEMBER 13, 2003, ELECTION, at 59 (2003).[11] This description does not distinguish between the term "administration" used in former section 5(c) and the term "managing" used in section 5(b) as amended in 2003. The term "managing," however, may have been used in the 2003 amendment because the legislature had examined the management fees that the Board paid to external investment managers. *See* TEXAS HOUSE OF REPRESENTATIVES COMMITTEE ON GENERAL INVESTIGATING, INTERIM REPORT TO THE 78TH TEXAS LEGISLATURE, at 3.1-3.2 (2003);[12] TEXAS HOUSE OF REPRESENTATIVES COMMITTEE ON GENERAL INVESTIGATING, INTERIM REPORT TO THE 77TH TEXAS LEGISLATURE, at 2.1 (2000).[13]

---

[10]*See supra* note 3.

[11]*See supra* note 4.

[12]*Available at* http://www.lrl.state.tx.us/scanned/interim/77/g286.pdf.

[13]*Available at* http://www.lrl.state.tx.us/scanned/interim/76/g286.pdf.

Accordingly, under section 5(b) as amended in 2003, Board expenditures for managing or administering PSF investments, including payments to external investment managers, must be paid from the legislative appropriation authorized by that section. Section 5(b) as amended in 2003 does not require the Board to pay from appropriated PSF funds the indirect management costs deducted from the assets of a mutual fund or other investment company in which PSF funds have been invested. In deciding whether to invest PSF funds in a particular investment company under the standard stated in section 5(f), the Board should consider the effect of such deductions on the investment return.

Your third question relates to the Board's express constitutional authority to invest the PSF in the Texas growth fund created by Texas Constitution article XVI, section 70. *See* Request Letter, *supra* note 1, at 4. *See* TEX. CONST. art. VII, § 5(f) (Board's authority to invest in Texas growth fund). This question is asked on the premise that a specific appropriation is required to pay the management fees deducted from mutual funds or other investment companies in which PSF assets are invested. *See* Request Letter, *supra* note 1, at 4-5. In view of our answer to question two, we need not address your third question.

## S U M M A R Y

Texas Constitution article VII, section 5 charges the State Board of Education with managing and investing the assets of the Permanent School Fund (PSF). Section 5(b) requires the Board to pay the expenses of managing PSF investments, including fees to external investment managers, from funds appropriated by the legislature from the PSF. The Board is not required to pay from appropriated PSF funds the indirect management costs attributable to mutual funds or other investment companies in which it invests PSF funds.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee