

ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

October 31, 2007

The Honorable Rick Perry
Governor of Texas
Post Office Box 12428
Austin, Texas 78711

Opinion No. GA-0578

Re: Whether a vacancy exists in the newly-created 444th and 445th Judicial Districts, and if so, whether those positions are required to be funded (RQ-0629-GA)

Dear Governor Perry:

You ask two questions about the creation and funding of two new district courts for Cameron County, Texas:

> 1. As of the effective date of the statute, are the courts [for the 444th and 445th Judicial Districts] created such that the Governor can make an appointment to either or both courts?

> 2. If a vacancy does exist and a judge assumes the seat either by appointment or election are the courts required to be funded, and is the judge's salary required to be paid?[1]

As you note, the 444th and 445th Judicial Districts were created by Senate Bill 1951. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1342, §§ 6, 10, 2007 Tex. Sess. Law Serv. 4547, 4549, 4551. Both districts are conterminous with the geographical boundaries of Cameron County. *Id.* Each court "is created on the effective date" of the relevant sections of the act: September 1, 2007 for both courts. *Id.* § 6, at 4549, § 10, at 4551, § 25, at 4567. The Election Code expressly provides that "[i]f a new office is created, a vacancy occurs on the effective date of the Act of the legislature creating the office or on the date the order creating the office is adopted." TEX. ELEC. CODE ANN. § 201.027 (Vernon 2003). At present, a vacancy exists in both courts, and "[w]hen a judicial district is created by amendment to [subchapter C, chapter 24 of the Government Code], the governor shall appoint a qualified person to the office of district judge." TEX. GOV'T CODE ANN. § 24.311 (Vernon 2004); *see also* TEX. CONST. art. V, § 28 (Governor's authority to fill district court vacancies until the next succeeding general election). Thus, in answer to your first question, courts for the 444th and 445th Judicial Districts were created on September 1, 2007, such that the Governor shall make an appointment to each court.

---

[1]Letter from Honorable Rick Perry, Governor of Texas, to Honorable Greg Abbott, Attorney General of Texas (Sept. 24, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

You also ask whether, after the vacancies have been filled, "the courts [are] required to be funded and . . . [each] judge's salary required to be paid." Request Letter, *supra* note 1, at 1. We first consider whether a person appointed as district judge of either court is entitled to a salary from the state. Article V, section 7 of the Texas Constitution specifically mandates that district judges receive "an annual salary to be fixed by the Legislature." TEX. CONST. art. V, § 7; *see also id.* art. V, § 1-a(1) (the Legislature shall provide for compensation of judges of appellate, district, and criminal district courts). Whether a district judge is elected or appointed, his right to a salary for services performed is of constitutional dimension under article V, section 7.

Another constitutional provision, however, authorizes the Legislature to require prior approval for the expenditure of state funds. *See* TEX. CONST. art. XVI, § 69. In 1985, the Legislature proposed, and the voters adopted, the following constitutional amendment:

> Sec. 69. The legislature may require, by rider in the General Appropriations Act or by separate statute, the prior approval of the expenditure or the emergency transfer of any funds appropriated to the agencies of state government.

*Id.*[2] For purposes of the present inquiry, the relevant portion of article XVI, section 69 relates to "the *prior approval* of the expenditure . . . of any funds appropriated to the agencies of state government." *Id.* (emphasis added). The Legislature may require prior approval of any appropriated expenditure either "by rider in the General Appropriations Act or by separate statute." *Id.* The same regular session of the Legislature that proposed the amendment that became article XVI, section 69[3] also added what was then Rider 8 to the appropriation for the "Judiciary Section, Comptroller's Department," in the General Appropriations Act. *See* General Appropriations Act, 69th Leg., R.S., ch. 980, art. IV-27, 1985 Tex. Gen. Laws 3349, budget p. 443. The most recent General Appropriations Act contains that same rider, now denominated Rider 4:

> Sec. 4. **Restriction. New District Courts.** No new district court may be funded until it has been approved by the commissioners court of the county or a majority of counties in the district.

General Appropriations Act, 80th Leg., R.S., ch. 1428, art. IV-37, § 4, 2007 Tex. Sess. Law Serv. 4897, 5399.

A rider may restrict the expenditure only of those monies appropriated by the funding to which the rider is attached. *See* Tex. Att'y Gen. Op. Nos. MW-498 (1982), V-1254 (1951), V-1253

---

[2]One purpose—the budget execution aspect of the amendment—permits "the emergency transfer of any funds appropriated to the agencies of state government." TEX. CONST. art. XVI, § 69. Under this portion of the provision, as implemented by chapter 317 of the Government Code, the Governor or the Legislative Budget Board may, under appropriate circumstances, transfer funds among the agencies of state government. *See generally* TEX. GOV'T CODE ANN. §§ 317.002–.005 (Vernon 2005).

[3]*See* Tex. H.R.J. Res. 72, 69th Leg., R.S., 1985 Tex. Gen. Laws 3370.

(1951) (rider may detail, limit, or restrict funds "therein appropriated"). Rider 4 relates to the appropriation of funds to the Comptroller for the state's portion of the payment of the salaries of district judges and comports with the language of article XVI, section 69 in permitting the Legislature to require "the prior approval of the expenditure . . . of any funds appropriated to the agencies of state government." TEX. CONST. art. XVI, § 69.

The Rider indicates that "[n]o new district court may be funded" unless and until the funding for the court, i.e., the $125,000 per court affected by the Rider, has been "approved by the commissioners court of the county." General Appropriations Act, 80th Leg., R.S., ch. 1428, art. IV-37, § 4, 2007 Tex. Sess. Law Serv. 4897, 5399.[4] The specific appropriation for the courts of the 444th and 445th Judicial Districts is found in section 19.46 of article IX, which relates to "additional contingency and other provisions":

> Sec. 19.46. **Contingency for Senate Bill 1951 or House Bill 4139.**
> Contingent upon passage of Senate Bill 1951, House Bill 4139, or similar legislation relating to the creation of judicial districts, the creation of the office of district attorney in certain counties, and the election and duties of certain district attorneys in certain counties, by the Eightieth Legislature, Regular Session, the Judiciary Section, Comptroller's Department is appropriated an amount estimated to be $892,686 for fiscal year 2008 and an amount estimated to be $947,113 for fiscal year 2009 from the General Revenue Fund and an amount estimated to be $634,819 for fiscal year 2008 and an amount estimated to be $679,350 for fiscal year 2009 from Judicial Fund No. 573 to implement the provisions of this legislation. Also contingent on passage of Senate Bill 1951, House Bill 4139, or similar legislation, the "Number of Full-Time-Equivalent Positions (FTE)" for the Judiciary Section, Comptroller's Department is hereby increased by 12.0 FTEs in fiscal year 2008 and 12.7 FTEs in fiscal year 2009 for the new district courts and new district attorney (estimated to be 12.7 FTEs).

*Id.* art. IX-85, at 5771. Senate Bill 1951, in turn, expressly provides that these two courts were created on September 1, 2007. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1342, §§ 6, 10, 25, 2007 Tex. Sess. Law Serv. 4547, 4549, 4551, 4567 (to be codified at TEX. GOV'T CODE ANN. §§ 24.589, .640).

As we have indicated, article V, section 7 of the Texas Constitution requires that a district judge receive "an annual salary to be fixed by the Legislature." TEX. CONST. art. V, § 7. In this instance, article XVI, section 69, which permits the Legislature to require the prior approval of

---

[4]While the word "it" in Rider 4 may arguably be ambiguous, we construe the word as referring to "funding" rather than "court" because that meaning more closely comports with the term "expenditure" as used in article XVI, section 69.

appropriated funds, and Rider 4, which is derived therefrom, are in irreconcilable conflict with article V, section 7 to the extent that the Rider permits the Commissioners Court of Cameron County to withhold the state's portion of the salaries for the judges of the 444th and 445th Judicial District Courts.

To reconcile these constitutional provisions, we are guided by established rules of constitutional construction. We construe the Texas Constitution as a whole, "and all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument, and effect must be given to each part of each clause, explained and qualified by every other part." *Purcell v. Lindsey*, 314 S.W.2d 283, 284 (Tex. 1958) (quoting *Gibert v. Kobbe*, 70 N.Y. 361 (N.Y. 1877)). Additionally, "[n]o part of the Constitution should be given a construction which is repugnant to expressed authority contained in another part, if its language fairly admits of any other interpretation." *Collingsworth County v. Allred*, 40 S.W.2d 13, 16 (Tex. 1931). Finally, "'[w]hen one section of the constitution expresses a general intention to do a particular thing, and another section expresses a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception.'" *County of Harris v. Sheppard*, 291 S.W.2d 721, 726 (Tex. 1956) (quoting *Smith v. Grayson County*, 44 S.W. 921, 923 (Tex. Civ. App. 1897, writ ref'd)).

If the Legislature's general authority to require prior approval of expenditures under article XVI, section 69 is construed to deny a district judge's entitlement to a salary from state funds that have been appropriated for that purpose, then the constitutional mandate in article V, section 7 is rendered nugatory. Following established principles of constitutional construction, the specific provision of article V, section 7, entitling a district judge to an annual salary, must prevail as an exception to the Legislature's general authority to require prior approval of expenditure of state funds. *See id.* at 726 (specific provision acts as an exception to more general provision).

This conclusion is also dictated by principles of statutory construction. *See* Tex. Att'y Gen. Op. No. GA-0016 (2003) at 5 ("Rules applicable to the construction of statutes also apply to the construction of items of appropriations and riders."). The "later-in-time" rule provides that when two bills enacted at the same session of the Legislature are repugnant and irreconcilable, the one approved last repeals the other to the extent of the repugnancy. *See Wright v. Broeter*, 196 S.W.2d 82, 85 (Tex. 1946); *see also Ex parte Jesus De La O*, 227 S.W.2d 212, 213 (Tex. Crim. App. 1950) (when two acts passed at the same legislative session cannot be reconciled, the later will prevail over the earlier). As we have noted, Senate Bill 1951, creating the two judicial districts in Cameron County, effective September 1, 2007, is based upon the authority of article V, section 7 of the Texas Constitution, which contemplates the creation of district courts and the payment of the salaries of the judges who fill those positions. Likewise, Rider 4 is authorized by article XVI, section 69 of the constitution. Rider 4, by providing that "[n]o new district court may be funded until it has been approved by the commissioners court of the county," operates, in effect, to grant to a commissioners court a functional veto over the existence of those courts. The General Appropriations Act,

including Rider 4, was enacted on May 27, 2007.[5] Senate Bill 1951 was enacted on May 28, 2007.[6] Thus, Senate Bill 1951, the later-enacted provision, prevails over Rider 4, to the extent of any repugnancy.

Moreover, Senate Bill 1951 itself contains several provisions that create judicial districts *subsequent to* September 1, 2007. *See, e.g.*, Act of May 28, 2007, 80th Leg., R.S., ch. 1342, § 4, 2007 Tex. Sess. Law Serv. 4547, 4549 (creating the 429th Judicial District of Collin County *effective January 1, 2009*); *id.* § 3, at 4558 (creating the 423rd Judicial District of Bastrop County *effective October 1, 2007*); *id.* § 1, at 4547 (creating the 397th Judicial District of Grayson County (*effective September 15, 2008*) (emphasis added). As we have explained, the 444th and 445th Judicial Districts were created on September 1, 2007, the effective date of Senate Bill 1951. These contrasting provisions demonstrate that the Legislature knows how, within the same bill, to specify different effective dates for different districts, and that, with regard to the 444th and 445th Judicial Districts, it chose to make the effective date September 1, 2007. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (every word of a statute "must be presumed to have been used for a purpose" and every word excluded "must also be presumed to have been excluded for a purpose").

For all these reasons, the courts for the 444th and 445th Judicial Districts have been created, and the state's portion of the salaries for the individuals who will serve as judges of those courts has been provided for by the Texas Constitution.

As to the county's portion of the funding for these courts, including such items as supplemental salary payments, housing, staff, and supplies, the answer is less clear-cut. Section 24.605 of the Government Code specifically provides that the relevant county commissioners court must provide the facilities and personnel to operate a Family District Court. TEX. GOV'T CODE ANN. § 24.605(b) (Vernon 2004); *id.* § 29.954 ("commissioners court of a county that is newly included in a judicial district by reapportionment under this subchapter shall provide suitable quarters, facilities, and personnel for the district court of the judicial district"). One court has evaluated the extent to which the separation of powers principle and the common law require courts to be funded by counties. In *District Judges of the 188th Judicial District v. Gregg County Judge*, certain district judges sought to compel the commissioners court to fund increased salaries for court personnel and to implement a court administration system for the county. *Dist. Judges v. Gregg County Judge*, 657 S.W.2d 908 (Tex. App.—Texarkana 1983, writ ref'd n.r.e.). The court recognized the inherent power of the judicial branch "to require the legislative and executive branches to provide essential staffing and facilities for it to properly perform its judicial functions." *Id.* at 909 (citing *Vondy v. Comm'rs Court of Uvalde County*, 620 S.W.2d 104, 108–09 (Tex. 1981); *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex. 1979)). The court further explained:

---

[5]General Appropriations Act, 80th Leg., R.S., ch. 1428, 2007 Tex. Sess. Law Serv. 4897, 5399, 5818.

[6]Act of May 28, 2007, 80th Leg., R.S., ch. 1342, §§ 6, 10, 25, 2007 Tex. Sess. Law Serv. 4547, 4549, 4551, 4967 (to be codified at TEX. GOV'T CODE ANN. §§ 24.589, .640).

> For this separation of powers principle to operate effectively as intended, there must be a reasonable and proper exercise of power by each branch and a harmonious cooperation among the three.  The judiciary is especially vulnerable to a breakdown of this cooperation, because it depends entirely upon the legislative and executive branches for its funding and for the practical enforcement of its decrees, and it has little effective recourse when those branches are derelict in their duties toward it.  When, therefore, the necessary spirit of cooperation fails[,] the judiciary must resort to its inherent power to insure that it will have the means to discharge its responsibilities.  The power is inherent by virtue of the very fact that the judiciary has been created and has been given constitutional duties.  *The power is not unlimited, however, especially in the area of government finances.*

*Id.* (emphasis added) (citations omitted).

This last sentence caused the court to suggest a possible remedy:

> The raising of revenue and the allocation of financial resources among all government entities is initially and primarily the responsibility of the legislative branch of government, and sound public policy considerations demand that when the judiciary seeks to use its inherent power to overcome this peculiar prerogative of the Legislature, it be held to a high standard and assume the burden of showing that the funds sought to be compelled are essential for the holding of court, the efficient administration of justice, or the performance of its constitutional and statutory duties. . . .

> The Texas Constitution has invested the Legislature with the authority to provide for and compensate all public officers and agents not provided for in the Constitution itself, and the Legislature has in turn delegated to the Commissioners Court of Gregg County the responsibility for setting the salaries of county employees paid wholly from county funds.  By virtue of its express constitutional and statutory authority in this area, then, it is the county's actions which have a presumption of validity, and *they are subject to being abrogated only upon a showing of essentiality.*

*Id.* at 909–10 (emphasis added) (citation and footnotes omitted).  The court concluded that "because any departure from the separation of powers doctrine mandated by the constitution is so drastic, such a step should be taken only on the basis of a detached and objective finding of essentiality." *Id.* at 910.  In the case before it, the court held that the district judges had "failed to establish the required essentiality," and that, "[a]bsent such proof there was no basis for the exercise of inherent power." *Id.*

Whether the Commissioners Court, in the situation you pose, must supply to each court a full staff and other perquisites at this time, or whether the courts' needs may be met by some other practical arrangement, is a question of essentiality, which requires factual determinations that cannot be resolved in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0463 (2006) at 2 (the Attorney General "cannot resolve questions of fact in the opinion process").

# S U M M A R Y

The courts for the 444th and 445th Judicial Districts were created on September 1, 2007, and a vacancy currently exists in each court such that the Governor is required to make an appointment to each court.  By virtue of article V, section 7 of the Texas Constitution, persons appointed as judges of the 444th and 445th Judicial Districts are entitled to an annual state salary.  The degree to which the judges are at this time entitled to supplemental salary payments, office space, staffing, and other perquisites of office depends upon a showing of essentiality, which requires factual determinations not amenable to the opinion process.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee